CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
LISA LABARRE (Bar No. 246429)
(E-Mail: Lisa_LaBarre@fd.org)
Deputy Federal Public Defender
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-1476
Facsimile: (213) 894-0081

Attorneys for Defendant
DANIEL ESCOBAR-BARUETA

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

UNITED STATES OF AMERICA,

Plaintiff,

v.

DANIEL ESCOBAR-BARUETA,

Defendant.

Case No. 2:20-cr-591-MWF

**MOTION TO DISMISS INDICTMENT UNDER 8 U.S.C. § 1326(d); EXHIBITS**

Hearing Date: May 29, 2024
Hearing Time: 3:00 p.m.

Defendant Daniel Escobar-Barueta, by and through his attorney of record Deputy Federal Public Defender Lisa LaBarre, hereby files Mr. Escobar-Barueta's Motion to Dismiss Indictment Under 8 U.S.C. § 1326(d). This motion is based upon the attached memorandum of points and authorities, the attached exhibits, the files and records in this case, and any evidence or arguments introduced at the hearing on this matter.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: April 22, 2024

By * /s/ Lisa LaBarre*
LISA LABARRE
Deputy Federal Public Defender

# TABLE OF CONTENTS

Page

I. INTRODUCTION ........ 1

II. STATEMENT OF FACTS ........ 1

A. November 2010 expedited removal ........ 1

B. December 2010 expedited removal ........ 3

C. 2016 reinstatement ........ 4

III. ARGUMENT ........ 4

A. The November 2011 expedited removal order is invalid ........ 4

1. Because he had no way to exhaust remedies or seek judicial review, Mr. Escobar-Barueta satisfies § 1326(d)(1) and (d)(2) ........ 4

2. The November 2011 expedited removal proceeding violated Mr. Escobar-Barueta's Due Process rights ........ 5

3. Mr. Escobar-Barueta could have plausibly obtained withdrawal of admission ........ 6

B. The December 2011 expedited removal order is invalid ........ 9

C. Because both expedited removal orders are invalid, the 2016 reinstatement order cannot sustain the illegal reentry charge. ........ 9

IV. CONCLUSION ........ 10

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*United States v. Arias-Ordonez*,
597 F.3d 972 (9th Cir. 2010) ....................9

*United States v. Arteaga-Gonzalez*,
2013 WL 5462285 (S.D. Cal. Sept. 30, 2013) ....................5

*United States v. Barajas-Alvarado*,
655 F.3d 1077 (9th Cir. 2011) ....................4

*United States v. Cisneros-Rodriguez*,
813 F.3d 748 (9th Cir. 2011) ....................6

*United States v. Figueroa-Valenzuela*,
2019 WL 6718081 (D. Idaho Dec. 10, 2019) ....................5

*United States v. Gambino-Ruiz*,
91 F.4th 981 (9th Cir. 2024) ....................1

*United States v. Garcia-Gonzalez*,
791 F.3d 1175 (9th Cir. 2015) ....................5

*United States v. Mendoza-Lopez*,
481 U.S. 828 (1987) ....................4

*United States v. Raya-Vaca*,
771 F.3d 1195 (9th Cir. 2014) .................... *passim*

*United States v. Rojas-Fuerte*,
2019 WL 1757523 (D. Or. Apr. 19, 2019) ....................5

**Federal Statutes**

8 U.S.C. § 1225(b)(1)(C) ....................4

8 U.S.C. § 1252(e)(5) ....................4

8 U.S.C. § 1326 ....................4

8 U.S.C. § 1326(d) ....................1, 4

INA 212(a)(7)(A)(i)(I) (8 U.S.C. 1182(a)(7)(A)(i)(I)) .......... 2, 3

**Regulations**

8 C.F.R. § 235.5(b)(2)(i) .......... 5, 6

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This Court previously dismissed the illegal-reentry indictment against Daniel Escobar-Barueta, following other District Courts in holding that the plain language of the expedited removal statute did not authorize the removals underlying the charge. The government appealed, and the Ninth Circuit agreed with the government's position--though it acknowledged that so doing required a "twistification" of the statute's text. *United States v. Gambino-Ruiz*, 91 F.4th 981, 988 n.6 (9th Cir. 2024).

But there was another reason that Mr. Escobar-Barueta's removal orders are invalid, a reason unaffected by *Gambino-Ruiz*. The officials that conducted these expedited removals did not follow the regulations designed to safeguard his fundamental Due Process rights. Moreover, he was prejudiced by those violations, making his removal fundamentally unfair. Because there is no valid removal order that can sustain the instant illegal reentry charge, 8 U.S.C. § 1326(d) requires dismissal of the indictment.

## II. STATEMENT OF FACTS

Driven by a need to financially assist his ailing parents, in 2006 the seventeen-year-old Mr. Escobar-Barueta entered the United States to find work. Exhibit A, Form I-213, dated November 29, 2010.) Mr. Escobar-Barueta found steady work in the broccoli fields around Santa Maria: backbreaking work with long hours and low pay, most of which he sent to his family in Mexico. (*Id.* (showing occupation as "field worker".)) While living in the United States, he fathered a United States citizen child. (*Id.* (showing "1 USC" minor child).) Unfortunately, after returning to Mexico and subsequently seeking entry into the United States without permission, officials initiated expedited removal proceedings against Mr. Escobar-Barueta.

### A. November 2010 expedited removal

On November 28, 2010, border officials found Mr. Escobar-Barueta in the United States, approximately two miles southwest of Red Hill, Arizona. (Exhibit A, Form I-

213, dated November 29, 2010.) Officers elected to place Mr. Escobar-Barueta in expedited removal proceedings, a type of removal proceeding reserved for individuals that are determined to have recently crossed the border illegally. Border patrol officers took a sworn statement from Mr. Escobar-Barueta. (Exhibit B, Record of Sworn Statement, dated November 29, 2010.)

The sworn statement form is three pages long. The first page contains lengthy pre-printed advisal explaining "your rights, and the purposes and consequences of this interview": i.e., that the statement was to determine whether Mr. Escobar-Barueta would be removed from the United States. The form indicates that the proceeding was conducted by Border Patrol Agent Erin Hughes in Spanish without an interpreter, but that preprinted advisal is entirely in English. Following that preprinted advisal are a series of questions and answers, also in English. (*Id.*) Mr. Escobar-Barueta's signature appears only on the last two pages of the sworn statement. (*Id.*) The following text appears above Mr. Escobar-Barueta's signature on the third page:

> I have read (or have had read to me) this statement, consisting of 1 pages (including this page). I state that my answers are true and correct to the best of my knowledge and that this statement is a full, true and correct record of my interrogation on the date indicated by the above named officer of the Department of Homeland Security. I have initialed each page of this statement (and the corrections noted on page(s) __).

The officers then executed a Form I-860, Notice and Order of Expedited Removal on November 29, 2010. (Exhibit C, Form I-860.) The form indicates that officers deemed him inadmissible under INA 212(a)(7)(A)(i)(I) (8 U.S.C. 1182(a)(7)(A)(i)(I)). (*Id.*) The supporting allegation stated that:

> You are an immigrant not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Immigration and Nationality Act; To wit you illegally entered into

> the United States by crossing the Mexico/United States international boundary twenty miles east of Lukeville, Arizona Port of Entry. You were enroute to Santa Maria, California to reside and work.

Based on those facts, the assigned officials signed the order of removal. (*Id.*) Although an officer signed the Form I-860 stating that they "personally served" the form on Mr. Escobar-Barueta, there is no indication that the charge or any other portion of the form was read to him in Spanish. (*Id.*) He was removed from the United States on December 8, 2010. (ECF 1.)

**B. December 2010 expedited removal**

On December 19, 2010, Mr. Escobar-Barueta was found by border patrol near Gila Bend, Arizona. (Exhibit D, Form I-213, dated December 19, 2010.) Border patrol officers again placed Mr. Escobar- Barueta in expedited removal proceedings and took a sworn statement. (Exhibit E, Record of Sworn Statement, dated December 20, 2010.)

As before, although the form states that the sworn statement was conducted in Spanish by a border patrol agent without an interpreter, it is transcribed as a preprinted advisal and series of questions and answers written in English. (*Id.*) Mr. Escobar-Barueta's initials appear on pages 1 and 2 of the statement, but his signature appears only on the last page. (*Id.*) The following text appears above Mr. Escobar-Barueta's signature on the third page:

> I have read (or have had read to me) this statement, consisting of 1 pages (including this page). I state that my answers are true and correct to the best of my knowledge and that this statement is a full, true and correct record of my interrogation on the date indicated by the above named officer of the Department of Homeland Security. I have initialed each page of this statement (and the corrections noted on page(s) Ø).

The officers then executed a Form I-860, Notice and Order of Expedited Removal on December 20, 2010. (Exhibit F, Form I-860.) Again, although an officer signed the Form I-860 stating that they "personally served" the form on Mr. Escobar-Barueta,

there is no indication that the charge or any other portion of the form was read to him in Spanish. (*Id.*) He was removed from the United States on January 13, 2011. (ECF 1.)

**C. 2016 reinstatement**

In 2016, immigration officials located Mr. Escobar-Barueta in Santa Maria, California. (Exhibit F, Notice of Intent/Decision to Reinstate Prior Order.) Immigration officials issued him a "reinstatement" of his January 2011 expedited removal order, effectuating his removal without any further proceeding. (*Id.*)

## III. ARGUMENT

A defendant charged with illegal reentry in violation of 8 U.S.C. § 1326 has a due process right to collaterally attack the removal order upon which the charge is predicated. *See United States v. Mendoza-Lopez*, 481 U.S. 828, 837-38 (1987). Following *Mendoza-Lopez*, Congress codified the procedure for a collateral attack, requiring that the defendant show: (1) he exhausted the administrative remedies that were available to seek relief from removal; (2) the removal proceedings improperly deprived him of judicial review; and (3) the entry of the order was fundamentally unfair. *See* 8 U.S.C. § 1326(d). The final requirement—fundamental unfairness—is fulfilled where the defendant shows that defects at the removal proceeding deprived him of due process and he suffered prejudice as a result. *See United States v. Barajas-Alvarado*, 655 F.3d 1077, 1085 (9th Cir. 2011).

**A. The November 2011 expedited removal order is invalid**

**1. Because he had no way to exhaust remedies or seek judicial review, Mr. Escobar-Barueta satisfies § 1326(d)(1) and (d)(2)**

Apart from a credible or reasonable fear interview, a person placed in expedited removal proceedings has no ability to seek administrative or judicial review. *See* 8 U.S.C. § 1252(e)(5); 8 U.S.C. § 1225(b)(1)(C); *United States v. Raya-Vaca*, 771 F.3d 1195, 1202 (9th Cir. 2014). Accordingly, like all defendants challenging an expedited removal order, he necessarily "exhausted all available administrative remedies and was

deprived of the opportunity of judicial review." *Raya-Vaca*, 771 F.3d at 1202. Accordingly, he satisfies § 1326(d)(1) and (2).

**2. The November 2011 expedited removal proceeding violated Mr. Escobar-Barueta's Due Process rights**

A regulation requires officials conducting expedited removals to follow particular procedures. Among other obligations, officials must (1) "advise the [noncitizen] of the charges against him or her" and (2) "have the [noncitizen] read (or have to be read to him or her) the statement." 8 C.F.R. § 253.5(b)(2)(i). In *United States v. Raya-Vaca*, the Ninth Circuit held that this regulation protects "fundamental due process rights," such that a violation of this regulation is a violation of Due Process. *Id.* at 1204. In *Raya-Vaca*, the "Jurat" at the end of the defendant's four-page sworn statement only acknowledged that he had read one page. The Ninth Circuit held that this was strong evidence that the officials had failed to read the entire statement as required by the regulation, in violation of Due Process. *Id.* at 1205. That same regulation also requires that the Form I-860 --- titled "Notice and Order of Expedited Removal" --- be signed by the noncitizen to acknowledge receipt. 8 C.F.R. § 235.5(b)(2)(i). Courts have thus held that the lack of the noncitizen's signature on this form also amounts to a Due Process violation. *United States v. Figueroa-Valenzuela*, 2019 WL 6718081, *4 (D. Idaho Dec. 10, 2019); *United States v. Rojas-Fuerte*, 2019 WL 1757523, *5 (D. Or. Apr. 19, 2019); *United States v. Arteaga-Gonzalez*, 2013 WL 5462285 (S.D. Cal. Sept. 30, 2013); *see also United States v. Garcia-Gonzalez*, 791 F.3d 1175, 1179 (9th Cir. 2015) (accepting government's concession of a Due Process violation where Form I-860 lacked defendant's signature.) That is true even where that form has a signature of an immigration officer stating that he served the form, given that the regulation expressly requires the *noncitizen's* signature. *Rojas-Fuerte*, 2019 WL 1757523, *5 (explaining that an officer's signature indicating service, "unsworn and not under penalty of perjury," does not satisfy the regulation or Due Process).

The documentary evidence here establishes that violation of the regulations, and thus, of Mr. Escobar-Barueta's Due Process rights. Similar to the defendant in *Raya-Vaca*, the acknowledgement that Mr. Escobar-Barueta signed in November 2011 indicates that only one page of Mr. Escobar-Barueta's three-page statement was read to him. Critically, a statement of the charge against him is not contained on that third page. Indeed, the statement of the charge is only contained on the separate Notice and Order of Expedited Removal, and there is no indication that form was ever read to Mr. Escobar-Barueta as required by the regulation. Accordingly, the evidence here shows that neither his entire statement nor the charge was read to Mr. Escobar-Barueta, in violation of 8 C.F.R. § 253.5(b)(2)(i). Just as in *Raya-Vaca*, that regulatory violation suffices to show a violation of Due Process.

### 3. Mr. Escobar-Barueta could have plausibly obtained withdrawal of admission

Additionally, Mr. Escobar-Barueta can show prejudice, because it is plausible that he could have been granted withdrawal of admission. To show prejudice from a due process violation, an illegal-reentry defendant must show that he had a "plausible" claim for relief from removal. *See Raya-Vaca*, 771 F.3d at 1207. In the context of an expedited removal, a defendant must show that it is plausible that he could have been allowed to withdraw his application from admission. *See id.* Plausibility is not a particularly demanding standard: a defendant "need only establish some evidentiary basis on which relief could have been granted." *Id.* (internal quotation marks omitted). "Plausible" is a lower standard that "probable"; in other words, a defendant need not show that relief was more probable than not. *United States v. Cisneros-Rodriguez*, 813 F.3d 748, 761 (9th Cir. 2011) (explaining that while a defendant "needs to show that relief was more than 'possible,' . . . she need not show that it was '*probable*.'"). In deciding whether a defendant has shown plausible grounds for relief, courts must first "identify the factors relevant to the agency's exercise of discretion for the relief being sought" and then determine whether "it was plausible that the agency official

considering the defendant's case would have granted relief from removal." *Raya-Vaca*, 771 F.3d at 1206 (quoting *United States v. Rojas–Pedroza*, 716 F.3d 1253, 1263 (9th Cir. 2013)).

In *Raya-Vaca*, the Ninth Circuit looked to the Inspector's Field Manual to determine the factors relevant to deciding whether to allow a noncitizen to withdraw their application for admission. The manual requires that officers "consider all facts and circumstances related to the case." *Raya-Vaca*, 771 F.3d at 1207 (*quoting* INS Inspector's Field Manual § 17.2(a) (2007), available at 2007 WL 7710869). The manual states that withdrawal "ordinarily" should not be permitted "in situations where there is obvious deliberate fraud." *Id.* For the Ninth Circuit, this is a "crucial consideration" of "singular importance." *Raya-Vaca*, 771 F.3d at 1208. Thus, fraud generally makes withdrawal of admission implausible, but a defendant can often show that relief was plausible for an expedited removal not involving fraud. Beyond this "singular[ly] importan[t]" consideration, the Field Manual lists six other non-exhaustive list of factors: "(1) the seriousness of the immigration violation; (2) previous findings of inadmissibility against the alien; (3) intent on the part of the alien to violate the law; (4) ability to easily overcome the ground of inadmissibility; (5) age or poor health of the alien; and (6) other humanitarian or public interest considerations." *Id*. at 1207.

Applying these factors, the *Raya-Vaca* Court found that most of these factors weighed against the defendant in that case. The Ninth Circuit deemed Mr. Raya-Vaca's immigration violation serious, given that he had six prior illegal reentry violations and had been identified as a potential smuggler. *Id*. at 1210. It noted that Mr. Raya-Vaca had been previously found inadmissible through a stipulated removal and that his age and good health did not warrant favorable treatment. Finally, it was not clear Mr. Raya-Vaca could easily overcome his inadmissibility for lack of valid documentation. *Id.* at 1208. The Court also noted that Mr. Raya-Vaca had a criminal

record, though it explained that this factor "does not appear to have much bearing on the plausibility of relief." *Id.* at 1209.

Despite the fact that most of these factors weighed against the defendant, the *Raya-Vaca* Court nonetheless held that withdrawal was plausible. *Id.* (noting Mr. Raya Vaca's history and family in the United States). In addition, the Ninth Circuit relied upon statistical evidence from 2008 the Department of Homeland Security that a significant portion -- 44 percent -- of noncitizens stopped at the border were allowed to withdraw. *Raya-Vaca*, 771 F.3d at 1210.[1]

Judged by the benchmark of *Raya-Vaca*, it is plausible that Mr. Escobar-Barueta could have been granted withdrawal. Compared to Mr. Raya-Vaca, Mr. Escobar-Barueta's immigration history was minimal. Additionally, Mr. Escobar-Barueta's decision to enter the United States was motivated by humanitarian needs. Specifically, he hoped to work and reside in Santa Maria, California to provide financial support to his ailing parents. Mr. Escobar-Barueta had previously worked and resided in the Santa Maria area. (*See* Exhibit B.) Moreover, he had a U.S. citizen child. *See Raya-Vaca*, 771 F.3d 1195, 1298 (holding that the "compelling humanitarian interest in keeping families united…weigh[s] significantly" in favor of relief) (quotation omitted). His U.S. citizen child also provided him a potential pathway to avoid inadmissibility and gain lawful status. *See id.* (holding that having a U.S. brother and partner provided a "relatively straightforward pathway to legal status, a relevant consideration" under the Field Manual's factors.)

Moreover, Mr. Escobar-Barueta relies upon the same statistics from *Raya-Vaca* showing a sizeable grant rate. That data is particularly helpful to Mr. Escobar-Barueta because that number encompasses noncitizens who are subject to expedited removal because of fraud. Although the data on grant rates solely for those who are not subject

---

[1] The Ninth Circuit found this statistical data persuasive even though Mr. Raya-Vaca's expedited removal took place in 2011.

to that bar are not available, it is presumably true that it must be even higher than the 44 percent total.

In sum, Mr. Escobar-Barueta has shown that there is "some evidentiary basis" upon which he could have been granted withdrawal of admission. That suffices to show prejudice and makes his November 2011 removal proceeding fundamentally unfair.

**B. The December 2011 expedited removal order is invalid**

The December 2011 expedited removal order suffered from the same defects at the November 2011 order. Like the November sworn statement, the December sworn statement indicates that only the last page was read to Mr. Escobar-Barueta, and there is no indication that the December 2011 charge was read to him. Just as in November 2011, those shortcomings in the December 2011 proceedings violated the governing regulation and Due Process. And for the same reasons as the previous proceeding, the relevant factors elucidated in *Raya-Vaca* show that Mr. Escobar-Barueta had at least plausible claim to withdrawal of admission. Thus, he can demonstrate that the Due Process violations were prejudicial, making the proceeding fundamentally unfair under 1326(d)(3). Finally, because there are no rights to administrative or judicial review in expedited removal proceedings, he satisfies the remaining requirements of 1326(d) for this removal as well.

**C. Because both expedited removal orders are invalid, the 2016 reinstatement order cannot sustain the illegal reentry charge.**

Mr. Escobar-Barueta's remaining removal was not the result of an independent removal order, but simply a reinstatement of his prior December 2011 expedited removal order. The Ninth Circuit has held that "a valid reinstatement of an invalid removal order cannot transform the prior order into a valid predicate for an illegal reentry conviction." *United States v. Arias-Ordonez*, 597 F.3d 972, 981 (9th Cir. 2010). Thus, because Mr. Escobar's previous expedited removal orders are invalid under

1326(d), the 2016 reinstatement cannot sustain the illegal charge and it must be dismissed.

## IV. CONCLUSION

For these reasons, Mr. Escobar-Barueta respectfully asks this Court to dismiss the indictment.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: April 22, 2024

By *_/s/ Lisa LaBarre_*
LISA LABARRE
Deputy Federal Public Defender